IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vincent J. Beaton, #196947,  ) | CIVIL ACTION NO. 9:09-3176-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Officer D. Lindsey, Officer NFN Sewell, ) | |
| Warden Claytor, Bob Olsen, ) | |
| Steven J. Reck, Ms. Cocciolone, ) | |
| Mr. Najjor, Warden McCall ) | |
| and Mr. Kirsch, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.[1]

The Plaintiff filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 14, 2010. Defendants thereafter filed a response in opposition to Plaintiff's motion for summary judgment on May 14, 2010, together with a separate response to Plaintiff's request for injunctive relief on his claims.[2]

---

[1] Plaintiff's initial filing with this Court was styled "Motion for a Restraining Order", but was docketed as a complaint. A second filing on February 8, 2010 was docketed as an Amended Complaint.

[2] Plaintiff initially only requested injunctive relief, bit in his amended compliant he also now requests monetary damages.

- 1 -



This matter is now before the Court for disposition.³

**Background and Evidence**

Plaintiff alleges in his verified complaint⁴ that the Defendant Olson, alleged to be in charge of "food service" at the Perry Correctional Institution (where Plaintiff is housed), "has been serving cold food, uncooked meat, unadequate amount of food less than 1,000 calories per day." Plaintiff also alleges that the serving trays are "greasy and dirty", and that there is no food services supervisor in the "SMU/kitchen"⁵ to ensure that food is served at the proper temperature, on clean trays, or in adequate amounts. Plaintiff further alleges that inmate kitchen workers don't wear gloves, hats or hairnets, and that there is sometimes "rocks and steel" in the food (usually beans), which cause injury.

Plaintiff alleges that the Defendant Kirsch, also with Food Services, aided and abetted Olsen in this conduct. Plaintiff alleges that the Defendant Reck, also with food services, was "addressed" by DHEC⁶ as well as by inmates, but although Reck said that things would "change for the better", things have actually gotten worse. Plaintiff alleges that the Defendant McCall, Warden

---

³This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Plaintiff has filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

⁴In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may be considered as evidence for a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

⁵Plaintiff is an inmate in the Prison's Special Management Unit (SMU), where prisoners with a higher custody level classification are housed separate from the general population.

⁶The South Carolina Department of Health and Environmental Control.



of the Institution, is aware of the problem of rock and steel being in the inmates' food, but has said it is the same as eating a fish that is full of bones.

Plaintiff also alleges that the Defendants McCall, Claytor (Associate Warden), and Najjor have cut off all direct access to the media to all inmates in the SMU, resulting in these inmates (who include the Plaintiff) having no radio, newspapers, magazines, etc. Plaintiff further alleges that Clayton and Najjor have both "stated that SMU inmates will not have . . . access to court . . . .". Plaintiff alleges that the Defendant Cocciolone will not properly process grievances and does not follow proper policy in forwarding complaints to Internal Affairs.

Finally, the Plaintiff alleges that the Defendants Lindsey and Sewell, both Correctional Officers, "degrade" inmates by conducting strip searches, which Plaintiff equates to "sexual attacks", and that the Defendant Sewell has also called him a racial slur. Plaintiff alleges that these actions have caused him "mental damages", and seeks monetary damages as well as injunctive relief. See generally, Plaintiff's Verified Amended Complaint.

Plaintiff has provided no evidence in support of his motion for summary judgment, but has attached an affidavit to his request for injunctive relief. Plaintiff attests in his affidavit that, since the filing of a second lawsuit against these Defendants, he had been constantly harassed and verbally abused by the Defendants. Plaintiff further attests that he has remained in the SMU lockup since July 13, 2009, even though his original sentence for service in the SMU was completed on that date, and that he should no longer be being kept in the SMU. Plaintiff attests that the Defendant Olsen still does not have a food supervisor in the SMU, and that he has been called names and denied supplies by someone named McCarthy (presumably a correctional officer). Finally, Plaintiff attests that the Defendant McCall has two "ladies" in the mail room "going into our legal mails."



See generally, Plaintiff's Affidavit.

In opposition to Plaintiff's motion for summary judgment and request for injunctive relief the Defendant Claytor has submitted an Affidavit wherein he attests that he is the Associate Warden at PCI. Clayton attests that he has not stated that SMU inmates will not have access to the courts, nor has he restricted any inmate's access to the courts. See generally, Claytor Affidavit. The Defendant Lindsey has also submitted an affidavit wherein he attests that he is a Correctional Officer assigned to the SMU unit at PCI, and that inmates in the SMU are required to submit to a body cavity search. Lindsey attests that he does "no more than do my job according to SCDC policy and instructions from [his] supervisors", and that he does not degrade, insult or call inmates names. See generally, Lindsey Affidavit. The Defendant Sewell has submitted an affidavit wherein he also attests that he does not degrade inmates or make sexual remarks or use racial slurs in performing his duties. Sewell attests that part of his duties are to perform strip searches on inmates in the SMU, which require inmates to bend at waist and spread their cheeks and cough. Sewell attests that the purpose of this procedure is to search for weapons and contraband. Sewell attests that inmates cells and clothing are also searched for weapons and contraband, and that all of this is for the safety of officers and inmates. Sewell attests that he at no time uses derogatory phrases or comments towards inmates, and that he is in the SMU to do his job and to maintain safety and security. See generally, Sewell Affidavit.

The Defendant McCall has submitted an affidavit wherein he attests that he is the Warden at PCI and that there had been several security issues which have arisen in the SMU unit at PCI. McCall attests that inmates in the SMU were using batteries in radios to construct handcuff keys, and that as a result he restricted the possession of radios and batteries for inmates housed in



the SMU. McCall further attests that inmates use magazines and newspapers to cover the opening of their cell and their cell lights, and that as a result of this activity he restricted magazines and newspapers from the SMU. McCall attests that, instead, he set up a newspaper to be prepared and issued through the Chaplin's office so that inmates in the SMU could keep up with current events. McCall attests that his actions were not punitive, but were directly related to security concerns caused by inmate activities in the SMU. See generally, McCall Affidavit.

The Defendant Najjar has submitted an affidavit wherein he attests that during the time period of Plaintiff's complaint he was an Administrative Specialist and Education Coordinator at PCI. Najjar attests that due to security issues raised by inmates making handcuff keys from batteries and radios, Warden McCall restricted radios and batteries from the SMU unit, and that he [Najjar] carried out McCall's instructions in this regard. Najjar further attests that he carried out Warden McCall's instructions relating to magazines and newspapers when another security issue arose concerning those items. Najjar attests that he has never advised SMU inmates or any other inmates that they would not have access to the courts, nor has he restricted them from access to the courts. See generally, Najjar Affidavit.

The Defendant Cocciolone (whose last name is now Snyder) has submitted an affidavit wherein she attests that she is the inmate grievance coordinator at PCI. Cocciolone attests that as inmate grievance coordinator, she processes the complaints and grievances of inmates according to SCDC policy, and that pursuant to this policy if the grievance is not properly prepared or signed, it is returned to the inmate. Cocciolone attests that she has never deliberately failed to process a grievance, or to delay a grievance of an inmate. See generally, Cocciolone Affidavit.

Finally, the Defendant Olsen has submitted an affidavit wherein he attests that he is



the Food Service Director at PCI. Olsen attests that he has over forty years in the food service industry, including working in hospital food service, twelve years with the United States Navy in food service, and over eighteen years with the Department of Corrections in food service. Olsen attests that inmates in the SMU receive the same food that is served to inmates in the general population, that food warmers are used to assure that food is served to SMU inmates at the proper temperature, and that the prison's menu meets all of the basic nutritional requirements and is approved by department headquarters. Olsen further attests that the food service operation at PCI undergoes an annual unannounced inspection by DHEC, that the last annual inspection was made on December 21, 2009, and that the food service operation at PCI was given a grade of "A". Olsen has attached a copy of this inspection report to his affidavit as Exhibit A. Olsen attests that the food service operation was also inspected on September 11, 2009 in response to inmate complaints, and again received a grade of "A" on that occasion as well. Olsen has attached a copy of that inspection report to his affidavit as Exhibit B.

Olsen attests that the prison's food operation has not received any complaints from the general population concerning uncooked meat. Olsen attests that he did note that they were using a recipe which called for ketchup to be placed on top of meatloaf, which he noted gave the meat a pink appearance. Olsen attests that he has since taken it out of the recipe. Olson attests that he regularly supervises the food service operation along with persons from his department, and that inmates are not served uncooked meat. Olsen further attests that the trays used to serve food to the inmates are regularly placed through a dishwasher, and are not greasy, dirty or unsanitary. With respect to Plaintiff's complaints about objects being in his beans, Olsen attests that the kitchen receives dry beans in bags, and that as in the outside world, on occassion there may be a small object



that was contained in the bag from the packaging plant. With respect to Plaintiff's complaints about gloves and hair nets, Olsen attests that DHEC recently did away with the requirements that serving gloves and hairnets or hats be used by persons handling food, and that he believes this requirement was voided because DHEC determined that more germs were being transmitted with the use of gloves. Olsen further attests that this change in DHEC requirements applies to food service operations in general, and does not just apply to correctional facilities. As a result, the food service workers no longer wear gloves, hats or hair nets based on the change in requirements by DHEC. See generally, Olsen Affidavit, with attached Exhibits.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments presented, the undersigned not only finds



and concludes that Plaintiff's motion for summary judgment should be denied, but that summary judgment should be granted in favor of the Defendants, and that this case be dismissed.

First, Plaintiff's claims about being referred to in a degrading manner and/or called a racial slur, even if assumed to be true for purposes of summary judgment, fail to set forth a claim of a constitutional magnitude. Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)["Verbal assault, standing alone, is not a . . . cognizable injury in a 1983 civil rights action"]; Sluys v. Gribetz, 842 F.Supp. 764, 765 n.1 (S.D.N.Y. 1994) affmd., Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Batista v. Rodriguz, 702 F.2d 393, 398 (2nd Cir. 1985); Ajaj v. United States, 479 F.Supp. 2d 501, 538 n. 16 (D.S.C. 2007); Musto v. Trinity Food Service, Inc., No. 07-231, 2010 WL 3565723 at * 13 (M,D.Fla. 2010)[Although "racial epithets are repulsive and generally the weapon of the uncivilized, . . . verbal harassment does not state a claim for relief in a federal civil rights action."] Therefore, while it is indeed reprehensible if correctional officers are engaging in such conduct, it is not the type of claim Plaintiff may pursue in a § 1983 lawsuit. Further, the requirement that maximum security inmates such as the Plaintiff undergo regular strip searches also fails to raise a constitutional claim. Bell v. Wolfish, 441 U.S. 520, 559 (1979) [finding that body cavity searches are reasonable under the Fourth Amendment because in prisons the "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence"]; see also Forbes v. Trigg, 976 F.2d 308 (7th Cir. 1992) (collecting cases), cert. denied, Trigg v. Forbes, 507 U.S. 950 (1993); Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986); Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694 (7th Cir. 1998) [strip searches constitutional absent evidence they were performed for purposes of harassment or punishment]; Thompson v. Sauza, 111 F.3d 694, 699 (9th Cir. 1997); Franklin v. Lockhart, 883 F.2d 654 (9th



Cir. 1989) [approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation]; Michenfelder v. Sumner, 860 F.2d 328, 332-333 (9th Cir. 1988) [strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next]; Amaechi v. West, 237 F.3d 356, 361 (4th Cir. 2001).

With respect to Plaintiff's complaints about the food service, he has provided no evidence whatsoever to support the general and conclusory claim that the food service itself, or the actual food that he receives, has or is in any way violated his constitutional rights. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Conversely, the Defendants have provided a sworn affidavit from the food service director attesting to the procedures used, and the quality of food served, at the prison (including in the SMU), and have also provided as exhibits the results of food service inspections conducted by DHEC, showing that the prison has received an "A" rating for its food services. Hence, Plaintiff has not only failed to show that he is entitled to summary judgment against the Defendants on this claim, but he has failed to even present evidence sufficient to create a genuine issue of fact with respect to this claim. This claim should therefore be dismissed. Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009)[For diet claim, prisoner must show Defendant was deliberately indifferent to an objectively serious risk of harm and that the Defendants knew about it and could have prevented it but did not]; Bailey v. Kitchen, No. 08-141, 2009 WL 102534, at * 3 (D.S.C. Jan. 12, 2009)["Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents"]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Levy v. State of



Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997)["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."].

Plaintiff's complaint that his grievances are not being properly processed, even if assumed to be true for purposes of summary judgment, also fails to state a viable constitutional claim. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005).

With respect to Plaintiff's continued placement in the SMU, he has again provided nothing more than a general allegation that he should be allowed to return to the general population of the prison, and that he is being kept in the SMU improperly. Such conclusory claims, without any supporting evidence or even sufficiently on point factual allegations, are simply not enough to allow this claim to proceed. See Hagebush v. United States, 657 F.Supp. 675, 677 (D.Neb. 1986)["[P]ro se pleadings may not be merely conclusory; the complaint must allege facts which, if true, state a



claim as a matter of law"]; Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)[Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]. The mere fact that Plaintiff is in the SMU simply does not, by itself, present a claim for relief. Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

Similarly, Plaintiff's conclusory and bare boned claim that the reason he is still in the SMU because he is being retaliated against for filing lawsuits, by itself and without any supporting facts or evidence, fails to state a claim. See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curium) [speculative and conclusory allegations cannot support retaliation claim]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995)



[summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights]; Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus].

Plaintiff's complaint about not being allowed to receive or use radios, magazines and newspapers is also without merit. Plaintiff is an SMU inmate, and this Court can take judicial notice from its many previous cases involving inmates in the South Carolina Department of Corrections system that SMU inmates are higher custody inmates who are in an even more controlled environment than general population inmates. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records]. A higher level of restriction is routinely placed on such inmates, and the Defendants have provided evidence to show the justification for the policies of which Plaintiff complains. Hence, no constitutional claim has been demonstrated. See Ramirez v. McCaughtry, No. 04-335, 2005 WL 2010173 (W.D.Wisc. 2005) [upholding policy that restricted access to newspapers, magazines, and photographs to inmates in segregation as part of an incentive system for good behavior]; In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton v. Bazzetta, 539 U.S. 126, 132 (2003) ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the



legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"]; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], reh'd denied, 75 F.3d 448 (9th Cir. 1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."].

Finally, Plaintiff has provided no probative evidence, or even competent argument, to show that he has been denied access to the courts. To the contrary, Plaintiff's filings in this case as well as the fact that he has now apparently filed a second lawsuit against one or more of these Defendants belies this claim. Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]. This claim is therefore without merit. Johnson, 718 F.Supp. at 38 ["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; see Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure



at issue].

## **<u>Conclusion</u>**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment, to include his separately filed claim for injunctive relief, be **denied**, that the Defendants be **granted** summary judgment in this case, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 6, 2010

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

